**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0144n.06
Filed: February 24, 2006

**NO. 04-4433**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SAAD HURMIZ KAROMI, | ) | |
| | ) | |
| *Petitioner-Appellant,* | ) | |
| | ) | ON APPEAL from the Board |
| v. | ) | of Immigration |
| | ) | Appeals |
| ALBERTO GONZALES, | ) | |
| | ) | |
| Attorney General of the United States, | ) | |
| | ) | |
| *Respondent-Appellee.* | ) | |

Decided and Filed _____, 2006.

**Before: SUHRHEINRICH and GRIFFIN, Circuit Judges; HOOD, Chief District Judge.**[*]

HOOD, Chief District Judge. Petitioner-Appellant, Saad Hurmiz Karomi ("Karomi") petitions for review from a decision of the Board of Immigration Appeals ("BIA") summarily affirming the Immigration Judge's ("IJ") decision to deny asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the Convention Against Torture ("CAT"). Because we find that the IJ's decision was supported by substantial evidence and was not an abuse of discretion, we **DENY** the petition for review.

## I.    BACKGROUND

---

[*]The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

On July 24, 2000, Karomi filed an application for asylum with the Immigration and Naturalization Service ("INS").[1] Karomi, a thirty-six year old Assyrian/Chaldean Christian male, is a citizen of Iraq who was born in Baghdad. Karomi's application asserts religious and political opinion grounds for asylum and withholding of removal under the INA and also seeks withholding of removal under the CAT.

The application alleges that Karomi fled Iraq because he assaulted an Iraqi guard who was assaulting his father. The application states his father owned a restaurant in Baghdad and that members of the Ba'ath Party and Iraqi security police often entered his father's restaurant to eat and refused to pay. It states that his father was afraid of saying anything because his family's ethnicity (Chaldean) and religion (Assyrian Christian) caused the family to be "hatred, and thought of as infidels, and spies for the West and America." (J.A. at 152.) He alleges that on January 14, 2000, he was in his father's restaurant when he saw Iraqi security police fighting with his father. In aid of his father, Karomi hit one of the guards and immediately fled from the restaurant because he feared he would be detained, interrogated, tortured, and executed for assaulting the guard.

The application also asserts that Karomi was a member of the Iraqi military from February 16, 1987, until September 2, 1999, where he was detained and subjected to assault for failure to salute an officer who "despised Christian Chaldean soldiers". (*Id*. at 153.) The application does not state how long he was detained.

In response to a notice to appear, on August 6, 2003, the IJ conducted a hearing. Karomi

---

[1]The Homeland Security Act of 2002 abolished the INS and transferred its functions to the Department of Homeland Security. Pub. L. No. 107-296, 116 Stat. 2135 (2002). The parties' briefs and this opinion, however, refer to the INS because Karomi filed his application in 2000.

conceded removability and asserted that he qualified for asylum and withholding of removal under the INA and withholding of removal under the CAT. At the hearing, Karomi testified about the fight that occurred at his father's restaurant. Karomi testified that during the skirmish, his father told him to leave Iraq. He stated that he immediately ran from the store and was followed and shot at by one of the guards, who missed him. He then traveled to Turkey and Mexico. While in Mexico, Karomi applied for asylum in the United States and was paroled into the country to pursue his application. During the pendency of his application, he met and married a permanent resident of this country. At the time of the hearing, Karomi had one child with his wife and she was pregnant with their second child.

Karomi submitted into evidence an Iraqi warrant for his arrest that was issued *in absentia*. The warrant charges Karomi with being affiliated with unauthorized organizations and distributing fliers against the Iraqi government and the Ba'ath Party regime. Karomi testified that the arrest warrant stemmed from the fight that occurred in his father's restaurant. He stated that the warrant was equivalent to a death sentence because he assaulted a security officer, which is likened to assaulting Saddam Hussein. Karomi testified that when he was in Mexico, he discovered that in March of 2000, his father was arrested and subsequently died while in an Iraqi prison. He did not testify to any details concerning his father's death. Karomi testified to being briefly detained while in the military as stated in his asylum application. He testified that his brother had also been detained for a minor argument with a Muslim concerning religion. Karomi stated that during the detainment, his brother was interrogated by the former Ba'ath party and pressured to join the party.

Karomi testified that he feared returning to Iraq, even though the former regime was no

3

longer in power, because Saddam Hussein was still alive[2] and that Muslims believe in revenge, no matter how long it takes.

Karomi called Ronnie Luka ("Luka") as a witness, an asylee from the same Vatana village in Baghdad, Iraq. Luka testified that he saw Karomi's house being raided after the skirmish at the restaurant and that Karomi's mother and sister were assaulted by the raiders. He testified that the officers kept stating that Karomi was a member of the opposition and a traitor. Luka also testified that he heard that Karomi's father died while being detained in an Iraqi prison following the skirmish at his restaurant. Again, Luka did not testify to any details concerning the father's death.

In closing arguments, counsel for Karomi stipulated that due to the war in Iraq there were changed country conditions, but argued that members of the former regime were still "conducting operations against Coalition forces" and that they were "viewing the Americans as the enemy." (*Id*. at 120 & 109.) Karomi argued that, "if an army or a soldier can't protect himself, how about my client? What prevents someone that he hit three years ago, knowing the mentality of the Muslim people with respect to revenge, that when he sees him on the street again, he won't shoot him or kill him." (*Id*. at 110.) Counsel argued alternatively that asylum should be granted for humanitarian reasons because Karomi married a permanent United States resident, had a child here, and his wife was pregnant with another child. Counsel argued that Karomi's wife did not have relatives in Iraq and based on current country conditions, Karomi could not provide for his family in Iraq. Further, Counsel mentioned that Karomi had not been in any trouble since he had been in the United States.

In an oral ruling, the IJ denied Karomi's application for asylum and withholding of removal

---

[2]At the time of the hearing, Saddam Hussein was not yet captured by Coalition forces.

under the INA and withholding of removal under CAT. The IJ found, first, that there had been no evidence of torture and denied this claim without analysis. Next, the IJ found that Karomi did not present any evidence of past persecution for his religion beliefs. The IJ did not make a specific finding as to whether Karomi suffered past persecution based on political opinion grounds. Instead, he denied asylum based on political persecution because Karomi's claims focused on the warrant for his arrest stemming from the fight in his father's restaurant and there was no evidence submitted supporting the claim that he had a reasonable fear of future persecution if he returned to Iraq. The IJ also rejected Karomi's argument that there were compelling humanitarian reasons to grant asylum because the past persecution suffered was not severe enough to grant relief. Finally, the IJ held that although Karomi had family ties in this country, relief would not be granted solely on this ground because Karomi entered the United States illegally and *then* married and had children here.

Karomi timely appealed the IJ's decision to the BIA. The BIA summarily affirmed the IJ's decision without opinion on November 2, 2004. Karomi then timely appealed the BIA's decision. Karomi argues that: (1) the IJ's decision on asylum was not based on substantial evidence and was an abuse of discretion; (2) the IJ erred in its analysis of humanitarian considerations that should have resulted in granting asylum; (3) the IJ erred in denying withholding of removal relief under the INA and CAT; and (4) the BIA erred in summarily affirming the IJ's denial of relief and failing to submit the case to a three-member panel for review.

## II. STANDARD OF REVIEW

This Court has jurisdiction to review the final decision of the BIA "affirming the IJ's denial of asylum, withholding of removal, and relief under the [CAT]." *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005); 8 U.S.C. § 1252. If the BIA affirms the IJ's decision without opinion or adopts

5

its reasoning, then this Court reviews the IJ's decision directly. *Singh*, 398 F.3d at 401; *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).

The INA provides that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Credibility determinations, likewise, are reviewed under the substantial evidence standard. *Id*. Thus, the Court "review[s] administrative findings of fact, such as whether an alien qualifies as a refugee, under the substantial evidence standard, keeping in mind that such findings are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Singh*, 398 F.3d at 400 (quoting *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004)). The IJ's denial of withholding of removal is also reviewed under the substantial evidence standard. *Allabani v. Gonzales*, 402 F.3d 668, 674 (6th Cir. 2005). The decision to deny asylum based on humanitarian reasons, on the other hand, is reviewed for an abuse of discretion. 8 U.S.C. § 1252(b)(4)(D); 8 C.F.R. § 1208.13(b)(1)(iii) (2005); *Ngarurih v. Ashcroft*, 371 F.3d 182, 191 (4th Cir. 2004).

## III.    ANALYSIS

### A.    Asylum

#### (1).    Changed Country Conditions

In order to qualify for asylum, the applicant must (1) qualify as a "refugee" pursuant to 8 U.S.C. § 1101(a)(42)(A); and (2) the situation must warrant an exercise of discretion by the IJ. *Yu*, 364 F.3d at 702. A "refugee" is defined as any person "who is unable or unwilling to return to" the person's country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).

6

In order to establish that the applicant has a well-founded fear of persecution, he must show:

> (1) that he has a fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there is a reasonable possibility of suffering such persecution if he were to return to that country; and (3) that he is unable or unwilling to return to that country because of such fear.

*Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). Thus, a well-founded fear of future persecution has both an objective and subjective component; "an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.*

If the applicant proves past persecution, then he is:

> presumed to have a well-founded fear of future persecution, but this presumption may be rebutted by the government if it shows by a preponderance of the evidence that conditions in the country have changed so fundamentally that the applicant no longer has a well–founded fear of persecution.

*Singh*, 398 F.3d at 401.[3]

The applicant's own testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a) (2005); *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994) (holding that the applicant can sustain the burden of proof by her testimony alone, if "the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent

---

[3]Karomi argues that he has proven past persecution and, thus, does not have to prove a well-founded fear of future persecution. (Appellant's Br. 13) (citing *Matter of Chen*, 20 I & N Dec. 16 (BIA 1989), that held that past persecution alone may be the basis for an asylum claim). Although the regulations provide that an applicant may establish that he is a refugee by proving either that he has suffered past persecution or that he has a well-founded fear of future persecution, an applicant is not entitled to asylum for either type of persecution if changed country conditions show that the applicant's fear is no longer well-founded. *See* 8 C.F.R § 1208.13(b)(1) & (b)(1)(i)(A) (2005).

account of the basis for his fear") (internal quotations and citations omitted).

The Sixth Circuit has held that "persecution . . . requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Pilica*, 388 F.3d at 950 (internal citations and quotations omitted). If the applicant proves either past persecution or a well-founded fear of future persecution, then he must show that this is the type of situation that warrants an exercise of discretion to grant asylum. *Yu*, 364 F.3d at 702.

The IJ first held that Karomi did not present any evidence of past persecution based on religious grounds beyond "the bare statement of his religious preference that would . . . support a claim of persecution on account of religious grounds." (J.A. at 17-18.) As to political grounds, the IJ did not make a specific ruling on whether Karomi suffered past persecution and, instead, held that changed country conditions following the war in Iraq precluded Karomi's eligibility for asylum. The IJ found that Karomi had stipulated that there were changed country conditions and, due to the changed conditions, the Ba'athist regime was no longer in power. The IJ noted that it was not likely that the guard Karomi attacked was still alive or still concerned with the incident in the restaurant. following the overthrow of the former regime in Iraq. Thus, the IJ held that Karomi no longer had a reasonable fear of future persecution.

Karomi makes several arguments that he established past persecution based on religious and political opinion grounds. These arguments need not be addressed because Karomi stipulated that there were changed country conditions in Iraq following the war and that Hussein's regime was no longer in power. (*Id*. at 120); *see* 8 C.F.R § 1208.13(b)(1) & (b)(1)(i)(A) (2005). Accordingly, we will focus on whether the IJ's decision that Karomi did not have a reasonable fear of future

8

persecution was based on substantial evidence.

Karomi argues that he presented sufficient evidence that he had a reasonable fear of future persecution because he introduced evidence that members of the former regime are still resisting Coalition occupation; that he will be subjected to revenge by Muslims for assaulting an Iraqi guard; that he will be associated with Coalition forces who are also Christian; and that Christian homes, cathedrals, and churches have been destroyed in Iraq by Muslim zealots. The only evidence, however, that Karomi submitted to the IJ were newspaper articles that discuss the rising hatred of Coalition and American occupation of Iraq. The articles do not mention hatred and/or violence toward Assyrian Christians or Coalition sympathizers. (*See* J.A. at 124 & 127-139). Rising hatred of American occupation, however, does not show that Karomi's fear of future persecution is reasonable based on religious or political persecution because it does not show how Karomi, as opposed to any other Iraqi, will face persecution. Although Karomi's statements concerning violence perpetrated on Christian Chaldeans or Coalition sympathizers may be true, Karomi did not submit any evidence of this nature to the IJ and, thus, the panel can not consider it. 8 U.S.C. § 1252(b)(4)(A) ("the court of appeals shall decide the petition only on the administrative record on which the order of removal is based").

Karomi also makes statements on appeal that there is a reasonable fear of future persecution because there is documented evidence that Iraq tortures those in detention. Not only was this evidence not presented to the IJ, but, as the government argues, the evidence does not prove a reasonable fear of *future* persecution because the regime that issued the warrant is no longer in power and there is no evidence that Karomi will be confined, much less tortured, if returned to Iraq. Finally, the IJ's ruling that it was unlikely that Karomi will face persecution from the Iraqi guard

9

that he assaulted several years ago is supported by substantial evidence because it had been several years since the assault and there was no evidence the guard was still alive or not in captivity following the war.

Therefore, the IJ's decision that Karomi did not submit any evidence that he had a reasonable fear of future persecution based either on religious or political grounds is supported by substantial evidence.

**(2).    Humanitarian Asylum**

The IJ has discretion to grant asylum to applicants that prove past persecution, but fail to prove a well-founded fear of future persecution if:

> (A) The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or
> (B) The applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.

8 C.F.R. § 1208.13(b)(1)(iii) (2005). The phrase "other serious harm" is defined as "harm that is not inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but is so serious that it equals the severity of persecution." 65 Fed. Reg. 76121, 76127 (2000). "Mere economic disadvantage or the inability to practice one's chosen profession would not qualify as 'other serious harm.'" *Id.*

At the hearing, Karomi argued that he should be granted discretionary relief because he has ties to America through his marriage to a United States permanent resident who was pregnant at that time and had a United States resident child. Karomi testified that his wife's family live in the United States and that the economic situation in Iraq would make it hard to provide for his family there. The IJ held that based on the evidence submitted, (1) Karomi's past persecution was not severe

10

enough to warrant relief and (2) his family ties to the United States, alone, were insufficient to grant relief based on "other serious harms." (J.A. at 20-24.)

On appeal, Karomi argues that the IJ erred in refusing to grant humanitarian asylum because he presented credible evidence that he was subjected to severe past persecution when he was tortured and assaulted by a superior officer because of his religion.[4] Karomi argues that the warrant issued for his arrest mandates a death sentence and charges him with crimes against the former regime. Karomi also argues that the IJ erred in only considering the severity of past persecution and did not consider "other serious harms" that would befall him or his family if he were removed, like his inability to provide for his family and the danger they would face in Iraq.

We find that the IJ's decision denying humanitarian asylum was not an abuse of discretion. Assuming for the purposes of this decision that Karomi's evidence established past persecution for religious grounds, the evidence does not show the type of severe persecution that warrants humanitarian asylum. The cases wherein past persecution has been found to be severe enough to warrant humanitarian asylum are far more severe than the case at hand. *See e.g., Matter of Chen*, 20 I & N Dec. 16, 19-21 (BIA 1989) (case establishing humanitarian asylum wherein the applicant was imprisoned at age eight and endured physical and emotional torture for years, but was not entitled to traditional asylum because of changed country conditions); *Mater of B*, 21 I & N Dec.

---

[4]Karomi makes several statements about atrocities that have befallen Christians in Iraq that are not supported by any citation to evidence in the record, including statements that eleven Christian churches were bombed by "[I]slamic zealots dedicated to removing Christian[s] from Iraq". Karomi also asserts for the first time that one of his children is disabled and will not be provided with sufficient medical attention in Iraq. As stated *supra*, our review is limited to what was included in the administrative record. Further, it is noted that Karomi did not file a motion to reopen the matter based on new evidence and did not argue that his former counsel who failed to file a motion to reopen was ineffective or inadequate.

11

66, 72 (BIA 1995) (holding that the past persecution suffered was severe because he was detained for several months, tortured through sleep deprivation, assaults, and electric shocks, and was forced to serve involuntarily in the military); *Matter of N-M-A*, 22 I & N Dec. 312, 326 (BIA 1998) (holding that where applicant was detained for a month, assaulted, and his father was likely killed by the government, the applicant had not established "severe" persecution like that shown in *Chen*); *Hana v. Gonzales*, No. 04-4005, 2005 WL 3420024, at \*4 (6th Cir. Dec. 14, 2005) (unpub.) (denying humanitarian asylum to Iraqi applicant and noting that "Hana was, at most, subjected to three detentions, none of which lasted longer than two months. He alleged no psychological torture, and he had only missing teeth and bruises on his return from his imprisonment.").

Karomi testified that he was assaulted by a superior officer several years ago for not saluting the officer and because the officer hated Christians. Karomi did not testify to any specifics of how long he was detained or whether he was injured by the assault. As for past persecution based on political grounds, the only evidence presented was the arrest warrant issued by the former regime. Karomi, however, unlike the asylum applicants that have been granted relief, was not detained under the arrest warrant and subjected to physical or psychological harm.

Further, Karomi's argument that the IJ erred in not considering "other serious harms" that would befall Karomi and his family if he was removed to Iraq is similarly without merit. The IJ's ruling specifically held that Karomi's family ties were insufficient to warrant discretionary asylum and this decision was not an abuse of discretion. Karomi's argument that it will be difficult or dangerous for his family to live in Iraq following the war are not "other serious harms" that Karomi and his family, as opposed to any Iraqi citizen, will face following the war in Iraq. *See Pergega-Gjonaj v. Gonzales*, No. 04-3226, 2005 WL 1027503, at \*4 (6th Cir. May 3, 2005) (unpub.)

12

(holding that although life after war in Kosovo was difficult because of lack of ability to find food and work, the applicant had not established "other serious harms" that would specifically occur to the applicant upon his return). Thus, the IJ did not abuse its discretion in denying humanitarian asylum because Karomi failed to produce evidence that he was severely persecuted in the past or would suffer "other serious harms" upon removal.

**B.      INA Withholding of Removal**

Pursuant to the INA, an applicant is entitled to withholding of removal "if [he] establishes that his 'life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Singh*, 398 F.3d at 401 (internal quotations and citations omitted). The applicant must show a clear probability of being subjected to persecution upon removal.[5] *Id*. "Because an alien must meet a higher burden in establishing a right to withholding of removal than in demonstrating asylum eligibility, an alien who fails to qualify for asylum necessarily does not qualify for withholding of removal." *Id.*

In the oral ruling, the IJ discussed the burden for withholding of removal under the INA and denied the claim without specifically addressing it, instead focusing the analysis on how Karomi did not meet the qualifications for asylum due to changed country conditions. For the CAT claim, the IJ found that "there's no indication that he would be tortured if he's returned to his country of origin." (J.A. at 19.)

Karomi argues that the BIA's summary affirmance of the IJ's denial of the withholding of removal claims should be reversed because the IJ failed to fully discuss these claims. Because we

---

[5]Karomi argues that Article 3 of CAT provides that the standard is whether the applicant can show that it is "arguable" that torture will occur. The regulations, however, clearly provide that the standard is "more likely than not." 8 C.F.R. § 1208.16(c)(2) (2005) .

find the IJ's denial of asylum was based on substantial evidence, however, Karomi's claim for withholding of removal under the INA is also necessarily foreclosed because the standard for the latter is higher. *Singh*, 398 F.3d at 401. Thus, the fact that the IJ did not discuss this claim at length is of no consequence.

## C. CAT Withholding of Removal

Pursuant to the CAT, an applicant must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* at 404. (internal quotations and citations omitted). Relevant evidence includes: (1) past torture; (2) possibility to relocate to another part of the country where torture would be unlikely; (3) gross, flagrant or mass violations of human rights; and (4) other relevant information regarding the conditions of the country of removal. 8 C.F.R. § 1208.16(c)(2) (2005). Torture is defined as,

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Id.* § 1208.18(a)(1).

Karomi argues that the IJ erred in not analyzing his claim for withholding under CAT and compares the case to *Mansour v. INS*, 230 F.3d 902 (7th Cir. 2000), where the Seventh Circuit remanded the CAT claim back to the BIA because the BIA did not properly analyze the claim. In *Mansour*, after being denied asylum and withholding of removal under the INA, the asylum applicant sought to reopen the matter to assert a CAT claim for withholding of removal. Previously,

14

the BIA affirmed the IJ's denial of asylum and withholding relief, agreeing with the adverse credibility determination of the IJ. The BIA then denied the applicant's motion to reopen the case for the CAT claim based on the prior adverse credibility finding, even though the new claim was based on different allegations. Karomi argues that the IJ similarly failed to analyze his CAT claim. Further, Karomi argues that the IJ should have granted relief under the CAT because he showed that there was a strong likelihood that he will be tortured based on evidence of past torture and the fact that he is an Assyrian Christian with ties to the United States.[6] Karomi asserts that the IJ heard evidence that he was targeted by Iraqi police, that a warrant was issued for his arrest, and that his father died while in custody.

Karomi is correct that his claim for withholding of removal pursuant to the CAT involves a separate question of the threat of torture without regard to the enumerated grounds for asylum. It is possible, therefore, for an applicant for asylum to succeed on a CAT claim even though a withholding of removal claim under the INA is denied. *Singh*, 398 F.3d at 405. The IJ did, however brief, discuss the CAT claim and found that there was no evidence that Karomi would be tortured if he returned to Iraq. The IJ's determination is supported by substantial evidence because the only evidence at the hearing concerning the possibility of torture was Karomi's testimony that he would be sentenced to death for the skirmish in his father's restaurant; Luka's testimony that he heard that Karomi's father died while being detained in an Iraqi prison; and Karomi's testimony that he was assaulted and detained by a superior office several years prior to the asylum application when he served in the military. This evidence, however, is not evidence of an "act by which severe pain or

---

[6]Karomi makes several statements concerning the treatment of Assyrian Christians by the former regime and how they are currently a target of opposition forces. Again, none of these arguments were presented to the IJ and no evidence was presented to support these statements.

suffering, whether physical or mental, [was] intentionally inflicted on a person for such purposes as" interrogating, punishing, or discriminating against him. 8 C.F.R. § 1208.16(c)(2) (2005). Karomi was not arrested, detained, or interrogated on the arrest warrant from the former regime. Luka did not testify to how Karomi's father died while in detention and Karomi's testimony of being detained and assault by his superior officer years ago does not rise to the level of torture.

Further, the regulations provide that Karomi must show that it is more likely than not that he will face torture upon his return that is "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208(a)(1). At the hearing, Karomi offered no evidence that the *current* Iraqi government tortures its detainees. *See Hadad v. Ashcroft*, No. 03-4285, 2005 WL 758237, *4 (6th Cir. Apr. 4, 2005) (unpub.) (holding that "even had the BIA been provided evidence showing Hadad could reasonably expect to be tortured by insurgents, Hadad would not have carried his burden of making out a prima facie case of eligibility for relief under the CAT, since he would not have shown a reasonable possibility that the Iraqi government would torture him").

## D.    Streamlining Procedures

Karomi argues that the BIA erred in streamlining the appeal by issuing a summary affirmance and not referring the decision to a three-member panel. The government argues first, that this Court lacks jurisdiction to review the streamlining procedures of the BIA and, second, that this was an appropriate matter for streamlining under INA regulations.

Pursuant to regulations issued in response to the burgeoning caseload of the BIA, certain appeals may be affirmed without an opinion by one member of the Board. The regulations provide,

16

(4) *Affirmance without opinion.*(i) The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that

(A) The issues on appeal are squarely controlled by existing Board or federal court precedent and; or

(B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

8 C.F.R. § 1003.1(e)(4) (2005). If the issue is not appropriate for affirmance without an opinion, "either a single BIA member may decide the case with a written opinion, [*see Id.* § 1003.1(e)(5)] or the case may be referred to a three-member panel for decision." *Tsegay v. Ashcroft*, 386 F.3d 1347, 1352 n. 3 (10th Cir. 2004). A Board member may only assign a case to a three-member panel if the case falls into one of six categories, including,

(i) The need to settle inconsistencies among the rulings of different immigration judges;

(ii) The need to establish a precedent construing the meaning of laws, regulations, or procedures;

(iii) The need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents;

(iv) The need to resolve a case or controversy of major national import;

(v) The need to review a clearly erroneous factual determination by an immigration judge; or

(vi) The need to reverse the decision of an immigration judge or the Service, other than a reversal under § 1003.1(e)(5).

8 C.F.R. § 1003.1(e)(6) (2005).

In *Denko v. INS*, 351 F.3d 717, 732 (6th Cir. 2003), a panel of this Court held that the

17

summary affirmance without opinion procedures were constitutional but noted that it was an open question whether the Court has jurisdiction to review the BIA's decision to utilize the procedures. *Denko* held that "[a]ssuming, without deciding, that judicial review properly is employed to assess whether the BIA correctly designated a case for summary affirmance, [the appellant's] argument that the summary-affirmance-without-opinion procedure was invoked improperly in her case nonetheless must fail" because the appellant's case squarely fit within the boundaries of the regulation. *Id.*; *see also Hassan v. Gonzales*, 403 F.3d 429, 437 (6th Cir. 2005) (upholding the propriety of the BIA's use of the summary affirmance without an opinion procedure but noting that "whether an alien may challenge the BIA's use of its streamlining procedure pursuant to the Administrative Procedure Act ("APA") remains an open question before this court"); *Vasha v. Gonzales*, 410 F.3d 863, 876 (6th Cir. 2005) (upholding the BIA's decision to not submit the issue to a three-member panel and noting that the Court's jurisdiction to review this issue is an open question).

Karomi argues that the BIA should not have issued a summary affirmance because the IJ "applied the wrong standard in rebutting the presumption that Karomi has a well founded fear of persecution and for establishing humanitarian asylum based upon other compelling reasons." (Appellant's Br. 9.)  Karomi also argues that "[t]he decision of the [IJ] is not based upon facts of record, rather it is predicated upon his personal opinion, speculation, and conjecture." (*Id.*)  He also argues that the appeal "raised substantial factual and legal issues that require the issuance of a written opinion." (*Id.*)

If the Court has the authority to review the BIA's decision to review the streamlining procedures of the BIA, the standard of review pursuant to the APA is abuse of discretion.  5 U.S.C. § 706(2)(A) (providing that the Court "shall . . . hold unlawful and set aside agency action, findings,

and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law") ; *Vasha*, 410 F.3d at 876. Assuming without deciding that we have the authority to review the streamlining procedures, we find that the BIA did not abuse its discretion because, as discussed *supra*, the IJ's decision to deny relief was based on substantial evidence, Karomi has not pointed out any errors that were not harmless, and the issues on appeal were not "so substantial that the case warrants the issuance of a written opinion." 8 C.F.R. § 1003.1(e)(4)(B).

Karomi also argues that the BIA's decision to not refer the case to a three-member panel was in error because the BIA "needs to establish a precedent construing the legal and factual standards for when it is appropriate to grant humanitarian asylum in light of the 'other serious harm' an asylum applicant faces in his native country." (Appellant's Br. 10.) Because the matter was appropriate for affirmance without an opinion, the BIA was foreclosed from referring the matter to a three-member panel. 8 C.F.R. § 1003.1(e)(5) (2005); *Tsegay*, 386 F.3d at 1352 n. 3. Thus, failure to do so was not an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.

19